UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JESUS TOLEDO PARDO,<br><br>　　　　　Defendant. | CASE NO. 2:22-cr-00151-LK<br><br>ORDER GRANTING GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER; DENYING MOTION TO SEAL |

　　　This matter comes before the Court on the Government's emergency appeal of release order and motion to stay. Dkt. No. 32. On September 15, 2022, Mr. Toledo Pardo appeared before Magistrate Judge S. Kate Vaughan, who ordered him released and placed on bond with special conditions. Dkt. No. 29. The Government then filed its emergency appeal of the release order and motion to stay Mr. Toledo Pardo's release pending a decision on its appeal. Dkt. No. 32. The Court granted the Government's motion to stay on September 16, 2022. Dkt. No. 35.

　　　In its appeal, the Government requests that the Court detain Mr. Toledo Pardo pending trial because he poses a risk of flight and is a danger to the community. Dkt. No. 32 at 5, 8–10. The Government subsequently filed additional allegations in its reply, Dkt. No. 46, so the Court ordered

ORDER GRANTING GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER; DENYING MOTION TO SEAL - 1

the Government to file evidence supporting those allegations. Dkt. No. 47. The Government filed its supplemental brief, Dkt. No. 53, as well as a motion to seal exhibits B and C of its supplemental evidence, Dkt. Nos. 54, 55. As permitted by the Court's order requiring supporting evidence, Dkt. No. 47, Mr. Toledo Pardo filed a response, Dkt. No. 56, and the Government filed a reply, Dkt. No. 78.

Having considered the record before Judge Vaughan, the audio recording of the detention hearing, the parties' filings, and the balance of the record, the Court finds that no condition or combination of conditions will reasonably assure the safety of other persons and the community. Therefore, the Court grants the Government's motion, Dkt. No. 32, and orders that Mr. Toledo Pardo be detained pending trial. The Court also denies without prejudice the Government's motion to seal the exhibits filed with its supplemental response. Dkt. No. 54.

## I.   BACKGROUND

Mr. Toledo Pardo is charged for his alleged role in a drug trafficking organization run by co-defendant Agustin Gutierrez Valencia (the "Gutierrez Valencia DTO"). Dkt. No. 22 at 4.[1] The Gutierrez Valencia DTO is alleged to transport illegal drugs—including methamphetamine, cocaine, fentanyl-laced pills, and fentanyl powder—from Los Angeles, California to the Seattle area for redistribution. *Id.* The Government alleges that after another vehicle used for transport was seized, Mr. Gutierrez Valencia sought a new driver and recruited Mr. Toledo Pardo for the job. *Id.* at 11.

---

[1] Defense counsel states that he has not yet received discovery from the Government so he is "forced to rely on the facts proffered in the Government's appeal." Dkt. No. 37 at 2 n.1. At this stage in the proceedings, the Government "may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence against the defendant, and other relevant factors." *United States v. Doan*, No. 15-cr-0120-JCC, 2015 WL 13685916, at *1 (W.D. Wash. June 10, 2015). The Government has done so in filings, Dkt. Nos. 22, 32, and in the hearing before Judge Vaughan, Dkt. No. 29. *See also* 18 U.S.C. § 3142(f)(2)(B) ("The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing.").

ORDER GRANTING GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER; DENYING MOTION TO SEAL - 2

1    The Government further alleges that during calls intercepted pursuant to a wiretap
2  authorization, agents learned that Mr. Gutierrez Valencia had arranged for Mr. Toledo Pardo to
3  drive a shipment of drugs in an RV from California to Washington in September 2022. Dkt. No.
4  32 at 2–3. Agents stopped and searched the RV and recovered approximately 275 pounds of
5  methamphetamine, approximately three kilograms of powdered fentanyl, and one loaded firearm.
6  Dkt. No. 53-1 at 4. Mr. Toledo Pardo was traveling with his girlfriend even though there was an
7  active no contact order of protection—in effect until 2025—that prohibited him from having
8  contact with her. *Id.* at 4–5. The order also prohibited him from possessing firearms. *Id.* at 5.

9    Mr. Toledo Pardo was arrested and the Government filed a motion for his detention. Dkt.
10 No. 21. Pretrial Services recommended his release with special conditions. Dkt. No. 32 at 4. Mr.
11 Toledo Pardo sought release with the special conditions recommended by Pretrial Services. Dkt.
12 No. 29. Judge Vaughan held a detention hearing on September 15, 2022, *id.*, and the Court has
13 reviewed an audio recording of the proceedings.

14   Noting that a presumption of detention applies in this case, Judge Vaughan considered the
15 least restrictive conditions to both keep the community safe and ensure that Mr. Toledo Pardo is
16 able to return to Court. With respect to the risk of flight, Judge Vaughan noted that Mr. Toledo
17 Pardo "has been here for his adult life, his family is here, he has children here, and although he is
18 not here lawfully, the Court does not consider that Mr. Toledo Pardo presents a significant risk of
19 flight." Audio Recording of Hearing at 19:20–19:36. With respect to the risk to the community,
20 Judge Vaughan emphasized that "the charged offense is extremely concerning, involving an
21 enormous amount of drugs and also a firearm," but found that the weight of the evidence against
22 Mr. Toledo Pardo—albeit the least important of the factors she considered—supported her ultimate
23 finding that with appropriate conditions, he does not pose a significant risk of flight or a danger to
24 the community. *Id.* at 19:36–20:16; *see also id.* at 10:52–11:03 (confirming with the Government

that "you are basing your idea that Mr. [Toledo] Pardo has been [engaging in the DTO] prior to this particular stop [in the RV] simply on the statement 'you know how much you're going to be paid,' there's no other facts, no other observations, no other evidence"). Accordingly, Judge Vaughan ordered Mr. Toledo Pardo released with special conditions, including a prohibition on possessing or having access to firearms, location monitoring, a restriction on travel, pretrial supervision, a curfew, surrender of all travel documents, a drug and alcohol evaluation, and adherence to any treatment recommendations directed by Pretrial Services following the evaluation. Dkt. No. 30 at 1.

On September 21, 2022, a grand jury returned an indictment charging Mr. Toledo Pardo with Conspiracy to Distribute Controlled Substances under 21 U.S.C. §§ 841(a)(1) and 846, and Possession of Controlled Substances with Intent to Distribute under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2. Dkt. No. 38 at 1–2, 6. After the indictment was returned, Magistrate Judge Paula McCandlis ordered the continuation of the conditions of release as previously set. Dkt. No. 45.

## II.   DISCUSSION

**A.   Legal Standard for a Motion to Review a Release Order**

A party is permitted to seek review of a magistrate judge's release order under 18 U.S.C. § 3145(a), which provides that "[i]f a person is ordered released by a magistrate judge . . . (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release[.]" In deciding such a motion for review, the district court reviews the magistrate judge's order de novo. *See, e.g.*, *United States v. Koenig*, 912 F.2d 1190, 1192–93 (9th Cir. 1990).

Pursuant to the statute, the Court applies the same standard and factors as the magistrate judge. The Court "shall order the pretrial release of the person on personal recognizance, or upon

execution of an unsecured appearance bond . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the Court determines that release on personal recognizance "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community," the Court "shall order" release on conditions; specifically, "the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(c)(1)(B). If, however, "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the judicial officer "shall" order the defendant detained. 18 U.S.C. § 3142(e)(1).

In determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, the Court must consider (1) the nature and seriousness of the offenses charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, including but not limited to his character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, record concerning appearance at court hearings, and criminal history, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). The weight of the evidence against the defendant is the least important of these factors, and the Court may not engage in a pretrial determination of guilt or innocence. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

Although pretrial detention should only be granted "in rare circumstances . . . and any doubts regarding the propriety of release should be resolved in the defendant's favor," *United*

*States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991), a rebuttable presumption "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community" where there is probable cause to believe that the defendant committed a Controlled Substances Act offense for which the maximum term of imprisonment is 10 years or more. 18 U.S.C. § 3142(e)(3). The return of an indictment is sufficient to support a finding of probable cause triggering this presumption. *Kaley v. United States*, 571 U.S. 320, 329 n.6 (2014).

In order to rebut the presumption against pretrial release, the defendant "must produce evidence that he does not pose a danger to the community or a risk of flight." *United States v. Valenzuela*, No. 12-cr-062-RSL, 2012 WL 1377087, at *2 (W.D. Wash. Apr. 19, 2012). Defendant's burden is one of production, not persuasion, and once that burden is met, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* (cleaned up). In addition, once the Defendant has met his burden of production, the Government bears the burden of showing that the defendant poses a danger to the community by clear and convincing evidence, and that a defendant poses a flight risk by a preponderance of the evidence. *Gebro*, 948 F.2d at 1121.

**B.     Presumption Against Mr. Toledo Pardo's Release**

Mr. Toledo Pardo is charged with Conspiracy to Distribute Controlled Substances under 21 U.S.C. §§ 841(a)(1) and 846, and Possession of Controlled Substances with Intent to Distribute under 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2. Dkt. No. 38 at 1–2, 6. Violations of § 841(a) involving 400 grams or more of fentanyl or 50 grams or more of methamphetamine require a minimum prison sentence of ten years. 21 U.S.C. § 841(b)(1)(A)(vi), (viii).

Government investigators determined that approximately 275 pounds of methamphetamine and approximately three kilograms of powdered fentanyl were inside the RV driven by Mr. Toledo

Pardo. Dkt. No. 53-1 at 4. A grand jury indicted Mr. Toledo Pardo, and others, for knowingly and intentionally conspiring to distribute methamphetamine and fentanyl. Dkt. No. 38 at 1–2. As a result, probable cause exists that he committed an offense under the Controlled Substance Act that carries a mandatory minimum ten-year sentence, and a rebuttable presumption arises against his release. *See* 18 U.S.C. § 3142(e)(3)(A); *Valenzuela*, 2012 WL 1377087, at *2.

**C.     The Statutory Factors Weigh Against Releasing Mr. Toledo Pardo Pending Trial**

The Court also considers the factors set forth in 18 U.S.C. § 3142(g). For the reasons discussed below, the Court concludes that no condition or combination of conditions will reasonably assure the safety of the community.

1. <u>Nature and Seriousness of the Offenses Charged</u>

The charged offenses are very serious, involving a conspiracy to distribute and possession with intent to distribute large quantities of fentanyl and methamphetamine. Dkt. No. 38 at 1–2, 6. Because "the distribution of drugs is a serious offense," the "nature of the offense weighs strongly in favor of detention[.]" *United States v. Christie*, No. CR10-00384-SOM, 2010 WL 2900371, at *4 (D. Haw. July 20, 2010); *see also United States v. Carillo Lopez*, No. MJ20-0020-JCC, 2020 WL 3414674, at *3 (W.D. Wash. June 22, 2020) (possession of methamphetamine and heroin with intent to distribute were "serious" offenses that "reflect a serious disregard for the personal safety of others and a fundamental disrespect for the law."). The charged offenses also carry long terms of incarceration, including a mandatory minimum 10-year sentence as set forth above, further highlighting the seriousness of the offenses. 21 U.S.C. § 841(b)(1)(A).

Although Mr. Toledo Pardo argues that his role in the offenses was "minor," Dkt. No. 37 at 4, transporting large amounts of dangerous and illegal drugs across three states is not an insignificant task with respect to drug trafficking. *United States v. Nguyen*, No. CR07-344RSL, 2008 WL 4163135, at *3 (W.D. Wash. Sept. 4, 2008) (finding clear and convincing evidence that

ORDER GRANTING GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER; DENYING MOTION TO SEAL - 7

defendant was a danger to the community where the government proffered that he "was directly involved with the transportation of hundreds of pounds of marijuana and hundreds of thousands of dollars in cash for a significant drug trafficking organization" and possessed three loaded guns in his home). And when Mr. Toledo Pardo asked in the intercepted communications how much he would be paid, one of the co-conspirators responded that Mr. Toledo Pardo knew how much he would be paid, suggesting that he had transported drugs before. Dkt. No. 32 at 3. Therefore, the seriousness of the charged offenses weighs heavily in favor of pretrial detention.[2]

## 2. Weight of the Evidence

As Judge Vaughan noted, there is limited evidence at this point that Mr. Toledo Pardo played a larger role in the DTO. Audio Recording of Hearing at 19:36–20:16; *see also id.* at 10:52–11:03 (confirming with the Government that "you are basing your idea that Mr. [Toledo] Pardo has been [engaging in the DTO] prior to this particular stop [in the RV] simply on the statement 'you know how much you're going to be paid,' there's no other facts, no other observations, no other evidence"). While the weight of the evidence is the least important factor, *see Motamedi*, 767 F.2d at 1408, the Court agrees with Judge Vaughan that it weighs in favor of releasing Mr. Toledo Pardo pending trial.

## 3. The History and Characteristics of the Defendant

The third factor requires the Court to consider the "history and characteristics" of the defendant, including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past

---

[2] The Government also notes that it is considering an obstruction charge against Mr. Toledo Pardo based on the possibility that he hid his cell phone after his arrest. Dkt. No. 46 at 3. Minutes after Mr. Toledo Pardo's arrest, two calls were placed from his cell phone to co-defendant Gutierrez Valencia and the phone was not taken into custody when he was arrested, leading an FBI investigator to conclude that it was "removed from the RV, shut off, and hidden after he was taken into custody." Dkt. No. 53-1 at 5–6. Defendant counters that "[t]here is nothing unlawful about having a friend or close relative take possession of one's property following an arrest." Dkt. No. 56 at 2. Given that the Government has not yet charged an obstruction offense, the Court does not consider this issue further.

conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," and whether, at the time of the arrest, "the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law[.]" 18 U.S.C. § 3142(g)(3). While Mr. Toledo Pardo does not have lawful immigration status in the United States, he has lived in Western Washington for 18 years and has family in the Seattle area, including his parents, siblings, and young children. Dkt. No. 37 at 1–2.

The Court also considers Mr. Toledo Pardo's criminal convictions, including his 2020 conviction for Domestic Violence Assault in the Fourth Degree and his 2021 conviction for violating a Domestic Violence No Contact/Protection Order issued by the SeaTac Municipal Court. Dkt. No. 32 at 9; *see also* Dkt. No. 56 at 3 (after Mr. Toledo Pardo was arrested in July 2021 for violating the no-contact order, he "pleaded guilty to a misdemeanor charge of violating the no contact order, was placed on probation, and was required to attend domestic violence counseling."). Assaulting a domestic partner and violating a court order designed to protect the victim are serious issues that impact the safety of the domestic partner and the community. *See, e.g.*, *United States v. Zavalza-Sanchez*, No. CR20-0092-JCC, 2021 U.S. Dist. LEXIS 96255, at *5 (W.D. Wash. May 20, 2021) (finding that this factor weighed against release where the defendant had been convicted of disorderly conduct, violating two no-contact orders, and domestic violence, and courts had issued multiple warrants against him for failing to appear). And while Mr. Toledo Pardo has re-enrolled in a Domestic Violence Moral Reconation Therapy program, that decision was not voluntary; he was required to do so by SeaTac Municipal Court. Dkt. No. 32 at 9–10.

Furthermore, Mr. Toledo Pardo was with his girlfriend "M.J." in the RV when he was arrested, despite the fact that there was an active order of protection preventing him from having contact with her. Dkt. No. 53-1 at 4. The no contact order also expressly prohibited him from

ORDER GRANTING GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER; DENYING MOTION TO SEAL - 9

possessing a firearm while the order of protection is in place, but a firearm was recovered from the RV as well. *Id.* at 5.

Importantly, since he has been detained, Mr. Toledo Pardo has continued to disregard court orders. He has violated the no contact order by calling his girlfriend twice while detained at the Federal Detention Center pending review of Judge Vaughan's release order. *Id.*; *see also* Dkt. No. 55-1 at 9–25 (two September 21, 2022 calls to "M.J."). Making those calls also violated Judge Vaughan's order—issued just days before at Mr. Toledo Pardo's September 15, 2022 detention hearing—to comply with the no contact order. *See* Audio Recording of Hearing at 22:46–23:00 (explaining that it was "absolutely essential" that he comply with the no contact order); *see also* Dkt. No. 30 at 2 (the special conditions of release, which Mr. Toledo Pardo signed, included compliance "with all other courts orders and terms of supervision, particularly with respect to orders in place from SeaTac Municipal Court."). During the hearing, the Pretrial Services Officer confirmed that she discussed the requirement of no contact with Mr. Toledo Pardo and he indicated he understood. Audio Recording of Hearing at 25:31–25:48. Mr. Toledo Pardo concedes that the Government's evidence demonstrates that he violated the no contact order while detained. Dkt. No. 56 at 2 ("Officer Knapp's declaration shows that the Defendant violated the no contact order" while detained); *id.* at 3 (stating that the two calls between Mr. Toledo Pardo and his girlfriend "are undoubtedly violations of [the] no-contact order, [but] there is nothing nefarious about them."). Although Mr. Toledo Pardo characterizes the phone calls as "benign," *id.* at 3, it is not their content that is concerning. Rather, the calls undermine the Court's confidence that Mr. Toledo Pardo will follow the Court's orders and conditions if released. And while Mr. Toledo Pardo contends that he is "entitled to a warning" about his violations, *id.* at 4, he has already received warnings through both the no-contact order and Judge Vaughan's order to obey it.

The Court also notes that in Mr. Toledo Pardo's first domestic violence matter, four

ORDER GRANTING GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER; DENYING MOTION TO SEAL - 10

separate warrants were issued for his failure to appear, and there was a violation of supervision. Dkt. No. 32 at 9. When Mr. Toledo Pardo was later convicted of violating a no contact order, one warrant was issued as well as a violation of supervision. *Id.* Mr. Toledo Pardo's criminal history, record of failing to appear for court hearings, and failure to comply with the no-contact order and related instructions from this Court are very concerning. Of particular concern is the fact that mere days after Judge Vaughan's express instruction that it was "absolutely essential" that he comply with the no contact order—and during the pendency of this Court's review of the release order—Mr. Toledo Pardo blatantly violated that clear condition of his release. Accordingly, this factor weighs heavily in favor of detention pending trial.

    4.    <u>Danger to Any Person or the Community</u>

In considering the danger to the community, the Court notes that the facts alleged in this case—including conspiring to distribute controlled substances and possession with intent to distribute large amounts of fentanyl and methamphetamine—"illustrate the inherent danger illegal drug distribution poses to communities." *Valenzuela*, 2012 WL 1377087, at *4; *United States v. Bethea*, 763 F. Supp. 2d 50, 54 (D.D.C. Cir. 2011) ("The purchase and sale of narcotics is an inherently dangerous activity, and [the defendant] poses a danger to the community through his cocaine and crack cocaine distribution.").

In addition, Mr. Toledo Pardo's prior convictions for Domestic Violence Assault in the Fourth Degree and for violating the Domestic Violence No Contact/Protection Order, coupled with his refusal to comply with the no contact order in the week following his detention hearing, suggest a present danger to his girlfriend. *See Motamedi*, 767 F.2d at 1407 (district courts may "infer a present danger to the community" from "prior convictions, police reports, and other investigatory documents"); *Zavalza-Sanchez*, 2021 U.S. Dist. LEXIS 96255, at *5–6 (denying defendant's motion to reopen his detention hearing where he was "currently subject to an order prohibiting him

ORDER GRANTING GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER; DENYING MOTION TO SEAL - 11

from contacting the mother" of his child, and that order, "together with his convictions for violating past restraining orders and for assault/domestic violence, show that less restrictive conditions than detention cannot sufficiently assure the community's safety.").

Considering all of the above, the Court finds that the Government has met its burden to show by clear and convincing evidence that Mr. Toledo Pardo is a danger to the community, and he has not overcome the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of others and the community if he is released. Therefore, the Court grants the Government's motion and orders Mr. Toledo Pardo to remain detained pending trial.

### D.     Motion To Seal

The Government has requested that two of the exhibits it filed with its supplemental brief be allowed to remain under seal: "Exhibit B (Certified Translations of Jail Calls made by Jesus Toledo Pardo) and Exhibit C (SeaTac Police Department Report from July 14, 2021)." Dkt. No. 54 at 1. The Government avers that the "[e]xhibits contain sensitive information." *Id.*

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'" *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). District courts therefore "start with a strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003). The standard for determining whether to seal a record depends on the filing to which the sealed record is attached and whether those records are "more than tangentially related to the merits of a case." *See Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1098-1102 (9th Cir. 2016). If the records at issue are more than tangentially related to the merits of the case, the court must apply the "compelling reasons" standard to the motion to seal. *See id.* If the records are only tangentially

related to the merits, the party seeking to seal the records need only show "good cause" to seal those records. *See id.*

Here, the records the Government seek to seal are only tangentially related to the merits of the case. But the Government's conclusory statement that the two exhibits "contain sensitive information," Dkt. No. 54 at 1, is insufficient to show good cause to seal them. *See Bluetooth SIG, Inc. v. FCA US LLC*, No. 2:18-cv-01493-RAJ, 2020 WL 2063561, at *2 (W.D. Wash. Apr. 29, 2020) (rejecting "blanket, conclusory assertions of harm" and refusing to accept "motions to seal that . . . offer only boilerplate reasons to seal documents from the public domain."); *United States v. Rhule*, No. 20-cr-0105-JCC-2, 2020 WL 5984072, at *7 (W.D. Wash. Oct. 8, 2020) (denying Government's motion to seal where it failed to proffer a sufficient explanation). Nor does a review of the sealed documents, Dkt. Nos. 55-1, 55-2, demonstrate a compelling reason to seal so obvious on their face as to justify sealing them without further explanation.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Government's motion, Dkt. No. 32, and orders that Mr. Toledo Pardo be detained pending trial.

The Court also DENIES the Government's motion to seal without prejudice. Dkt. No. 54. If the Government elects to supply the requisite factual basis and legal argument, it may refile the motion. In the meantime, however, the documents shall remain under seal for 30 days to provide the Government adequate time to refile the motion if it so chooses. *See* LCR 5(g)(6).[3]

Dated this 31st day of October, 2022.

*Lauren King*
Lauren King
United States District Judge

---

[3] As relevant here, Local Criminal Rule 1(a) states that Local Civil Rule 5(g)(2) and (6) "apply to criminal matters[.]"